United States District Court
Southern District of Texas
FILED

DEC 1 8 2002

Michael N. Milby
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | Civil Case No. 02-CV-15 |
| | ) | |
| GRADY F. HEROLD, SR.; et al. | ) | |
|     Defendants. | ) | |

### UNITED STATES'S MOTION FOR
### SUMMARY JUDGMENT & BRIEF IN SUPPORT

Respectfully submitted,

EILEEN J. O'CONNER
Assistant Attorney General

MANUEL P. LENA, JR.
Texas Bar No. 12201255
Attorney, Tax Division
U.S. Department of Justice
717 N. Harwood. Suite 400
Dallas, Texas 75201
214 880-9750
(214) 880-9774 (facsimile)
ATTORNEYS FOR UNITED STATES

MICHAEL T. SHELBY
United States Attorney

December 17, 2002

# INDEX

Page

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    *The Federal Estate Tax Liabilities and Liens* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    *Estate Owes State of Texas, but IRS Liens Have Priority* . . . . . . . . . . . . . . . . . . . . . 5

    *The Ad Valorem Tax Liabilities and Liens* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    *Judgments Against the Estate; Priority of Creditors* . . . . . . . . . . . . . . . . . . . . . . . . 7

LEGAL AUTHORITY & CASE FOR FORECLOSURE . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# CITATIONS

**Cases:**

    Bull v. United States, 295 U.S. 247, 259 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    Franchise Tax Board of California v. United States Postal Service, 467 U.S. 512 (1984) 9

    Southern, I.D. 28780 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

           32631 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    United States v. Grady F. Herold, Sr., et al., Civil No. B-01-053 . . . . . . . . . . . . . . . . . . . 7

    United States v. Rodgers, 461 U.S. 677 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10

    United States v. Sawyer, 243 F. Supp. 462 (D. Mass. 1965) . . . . . . . . . . . . . . . . . . . . . 11

# FEDERAL STATUTES

Page

26 U.S.C §2001(a) ................................................................. 7

    §6321 ................................................................. 8

    §6323(b)(6) ................................................................. 7

    §6324 ................................................................. 8

    §7403 ................................................................. 8, 10

    §7403 (b)(c) ................................................................. 8

    §7404 ................................................................. 8

28 U.S.C §2001 ................................................................. 1,9

    §2001(a) ................................................................. 9-10, 13

Fed. R. Civ. P. 56 ................................................................. 1

I.R.C.   § 2053 ................................................................. 4

United States District Court
Southern District of Texas
FILED

DEC 1 8 2002

Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| UNITED STATES | § | |
|     Plaintiff | § | |
| v. | § | Civil Case No. 02-CV-15 |
| GRADY F. HEROLD, SR.; et al. | § | |
|     Defendants | § | |

## UNITED STATES' MOTION FOR SUMMARY JUDGMENT & BRIEF IN SUPPORT

The United States moves for summary judgment under Fed. R. Civ. P. 56 to foreclose federal tax liens and deeds of trust against properties belonging to the Estate of Lillian Schwarz in partial satisfaction of the Estate's sixteen year old federal estate tax debt. In support, the United States submits the following facts and evidence that demonstrate there is no genuine issue of material fact and that the United States is entitled to judgment as a matter of law.

### ISSUES PRESENTED

1.     Whether the United States is entitled to foreclosure of its federal tax liens and/or its deed of trust against five tracts of land and certain mineral interests solely owned by the delinquent taxpayer, the Estate of Lillian Schwarz?

2.     Whether the United States is entitled under 28 U.S.C. § 2001 to sell these Properties at public auction in order to partially satisfy the Estate's federal tax liabilities?

### SUMMARY OF ARGUMENT

In this action the United States seeks foreclosure of its federal tax liens and deeds of trust against certain property owned by the Estate of Lillian Schwarz in order satisfy a sixteen year old tax debt. The amount of the debt has been adjudicated in a related case already decided by this

Court. The validity of the liens and deeds of trust against the property in question have been stipulated. The priority of claims against the property is not disputed. And, unlike the prior case, there are no reasons to delay enforcement of the liens and deeds of trust against the Estate's other properties.

### STATEMENT

The United States relies on the following undisputed facts and evidence.

1.    Lillian Schwarz died on August 24, 1985. At the time of her death, she owned the assets against which the United States now seeks foreclosure. The assets at issue, hereafter referred to collectively as "the Properties," are as follows:

    A.    Approximately 82 acres located in Cameron County, Texas;[1]

    B.    Approximately 7.8 acres located in Cameron County, Texas,[2]

    C.    Approximately 59.55 acres located in Hildago County, Texas;[3]

    D.    Approximately 239.70 acres located in Hildago, County, Texas;[4]

    E.    Approximately 41.68 acres located in Chambers County, Texas;[5]

    F.    Certain mineral interests located in Zapata County, Texas.[6]

2.    Grady Herold, Sr. was appointed as the independent executor for the Estate and holds

---

[1]    Described in Exhibit 1 to U.S. Original Complaint, incorporated herein by reference.

[2]    Described in Exhibit 2 to U.S. Original Complaint, incorporated herein by reference.

[3]    Described in Exhibit 3 to U.S. Original Complaint, incorporated herein by reference.

[4]    Described in Exhibit 4 to U.S. Original Complaint, incorporated herein by reference.

[5]    Described in Exhibit 5 to U.S. Original Complaint, incorporated herein by reference.

[6]    Described in Exhibit 6 to U.S. Original Complaint, incorporated herein by reference.

2

record title to the Properties. Defendants Kathryn Louise Herold, Peggy L. Horn, Ruby L. Wells and Doris Jean Shannon (hereafter "the Heirs") are the heirs in Ms. Schwarz's will and by operation of law on her death obtained an equitable interest in the Properties.

*The Federal Estate Tax Liabilities and Liens*

3.      On May 29, 1986, the Estate filed its Form 706 federal estate tax return that reported a gross estate valued at $15,219,969 and a tax liability of $5,684,832.

4.      Consistent with that return, the Internal Revenue Service assessed taxes against the Estate on July 7, 1986, and the IRS issued notice and demand for payment.

5.      The statutory lien in favor of the United States against the Estate arose on the date of assessment and attached to all Estate property including the Properties at issue here.

6.      Later in 1988, this originally assessed amount of tax was reduced by agreement between the IRS and the Estate as a result of several agreed upon reductions in the value of the real estate which had been included in the gross estate for estate tax purposes. On August 8, 1988, the Estate signed and filed a Form 890 based on an agreed, albeit reduced, gross estate value of $10,374,869 and federal estate taxes payable of $3,408,321.

7.      The IRS issued notice and demand for payment of the unpaid federal estate taxes upon the Estate.

8.      The Estate, despite extensions of time to pay, has not paid its federal estate tax liabilities in full.

9.      In addition to its statutory tax liens, the IRS filed Notices of Federal Tax Liens against the Estate:

        A.      in the Cameron County real property records on or about, September 21, 1992,

3

August 19, 1996, and February 21, 2001; and

B.      in the Hildago County real property records on or about, October 13, 1992,

August 19, 1996, and February 20, 2001.

10.     Furthermore, on August 17, 1995, the Estate and the Heirs executed a deed of trust

("Deed of Trust") in favor of the United States (IRS) as to the Estate's assets including the

Properties at issue here.

11.     On August 18, 1995, the Deed of Trust was recorded in the real property records of

Cameron County, Hildago County, and Chambers County, Texas.

12.     After this suit was filed, the Estate and the United States entered into a settlement

agreement and a Stipulation of Settled Issues between the Estate and the United States

("Stipulation").[7]

13.     As relevant here, the Stipulation fixed the total amount of the Estate's unpaid federal

estate tax, penalties and interest at $2,763,920 as of December 31, 2001, with additional

increases and decreases on this figure to be determined as set forth below:

A.      The $2,763,920 amount will be increased by the accrual of statutory
interest after December 31, 2001, and decreased by the agreed upon
deduction for such interest set forth below under paragraph B ("the
Stipulated Liability"). This Stipulated Liability is the total of all liens of
the United States against any and all property of the Estate.

B.      The Estate and Heirs are not entitled to any further deductions under I.R.C.
Section 2053 against the Stipulated Liability, except that the Estate is
entitled to a Section 2053 deduction for 50% of all federal interest
accruing on the Stipulated Liability after December 31, 2001.

14.     Critically, the Stipulation also contained the Estate and Heirs' agreement that:

_____

[7]      The Stipulation was filed in this case on April 1, 2002 [Pacer Doc. #40] and is incorporated herein
by reference.

4

A.    the United States has valid federal tax liens in the amount of the Stipulated

Liability against all of the property of the Estate;[8]

B.    the United States has valid deeds of trust in the amount of the Stipulated Liability

against all of the real property of the Estate;[9] and

C.     the statute of limitations for collection of the federal estate tax was open at the

time this case was filed and does not expire until August 1, 2005.[10]

*Estate Owes State of Texas, but IRS Liens Have Priority*

15.    The state inheritance tax owed by the Estate was due on May 24, 1986.

16.    Also, after this suit was filed, the State of Texas and the Estate entered into a Stipulation

of Settled Issues Between the State of Texas and the Estate of Lillian A. Schwarz which, among

other things, fixed the total amount of state inheritance tax, penalties and interest at $763,175.28

as of April 1, 2002, with additional interest accruing at $99.16 per day, subject to a concomitant

reduction should the federal estate tax liability stated above be reduced.

17.    The State of Texas also holds a valid lien against the Properties for unpaid state

inheritance taxes.

18.    On August 17, 1995, the State of Texas entered into a subordination agreement with the

United States ("Subordination Agreement") wherein the State of Texas agreed that its liens for

unpaid state death taxes filed in Cameron, Hildago and Chambers Counties, on August 6, 1986

and August 14, 1986, were subordinate to the IRS federal tax liens and Deed of Trust.

---

[8]      Stipulation ¶ G.

[9]      Stipulation ¶ H.

[10]     Stipulation ¶ F.

19.    The State of Texas further agreed that its liens would remain subordinate to the IRS

federal tax liens and Deed of Trust "regardless of the frequency or manner of renewal, extension,

change, or alteration of the Indebtedness secured thereby."

20.    On August 18, 1995, the Subordination Agreement was recorded in the property records

of Cameron County.

21.    By agreement dated August 24, 1997, the Deed of Trust was modified (the "Modification

Agreement"), and eventually signed by the IRS on September 29, 1997.

22.    On October 13, 1997, the Modification Agreement was recorded in the Cameron County

property records.

*The Ad Valorem Tax Liabilities and Liens*

23.    The following entities may have unpaid ad valorem assessments against the Estate for

certain Properties located within their jurisdictions: Cameron County, Texas; Cameron County

Emergency Services District; Cameron County Drainage District #1; Southmost Union Jr.

College District; South Texas Independent School District; San Benito Independent School

District; Port of Harlingen; Harlingen Consolidated Independent School District; Brownsville

Independent School District; Brownsville Navigation District; and the City of Brownsville

("Cameron Tax Entities"); Hildago County, Texas; South Texas Independent School District;

Hildago County Drainage District # 1; Hildago County Fire District # 2; City of Mercedes,

Texas; Mercedes Independent School District; Mercedes Water District # 9; and South Texas

Community College ("Hidalgo Tax Entities"); Chambers County, Texas; Chambers County

Trinity Bay Conservation District; Anahuac Independent School District; Chambers Liberty

Counties - Navigation District; and Chambers County Hospital District [Bayside Community

Hospital]("Chamber Tax Entities"); Zapata County, Texas; and Zapata Independent School District ("Zapata Tax Entities"), (collectively "the Local Property Tax Authorities").

24.     For ad valorem tax purposes for 2001, the Properties were valued at less than $800,000.

25.     The Estate currently owes ad valorem taxes against the Properties.

*Judgments Against the Estate; Priority of Creditors*

26.     On July 25, a judgment was entered in a related case, United States v. Grady F. Herold, Sr., et al., Civil No. B-01-053, U.S. District Court, Southern District of Texas, Brownsville Division. The Estate, the United States, the State of Texas, and several of the Ad Valorem Taxing Authorities were parties to that case. That judgment incorporated stipulations as to the amounts of the Estate's tax liabilities, the validity of the liens of the United States and the State of Texas against the Estate, and the relative priority to distribution of the sale proceeds of the two South Padre Island tracts.[11]

27.     With the exception of Legendary's lien against the South Padre Island tracts, the same priority of liens against the Estate that were adjudicated in the first case apply to the Properties in this case. Thus, after costs of sale are paid, the Local Property Tax Authorities will have first priority in the proceeds from foreclosure of the Properties to the extent of any unpaid real property ad valorem taxes, per 26 U.S.C. § 6323(b)(6). Once the ad valorem property taxes are satisfied out of the foreclosure sale proceeds, the IRS liens will have second priority. The State of Texas will have third priority and the Estate would be entitled to any remaining funds.

## LEGAL AUTHORITY & CASE FOR FORECLOSURE

26 U.S.C. § 2001(a) imposes a tax on the taxable estate of every decedent who is a United

---

[11]     A copy of the July 25, 2002, judgment is attached hereto as Gov. Ex. 7.

States citizen. Once an estate tax return is filed and the taxes are assessed, the estate must pay the

taxes in full or a statutory lien arises against the estate's property. 26 U.S.C. §§ 6321 and 6324.

The United States may bring a civil action to enforce the tax lien under 26 U.S.C. §§ 7403 and

7404. In particular, 26 U.S.C. § 7403 authorizes a federal district court to order the judicial sale

of property to satisfy the tax indebtedness of a delinquent taxpayer.[12] All persons having liens or

claiming an interest in the property are made parties to the suit. 26 U.S.C. § 7403(b). Under 26

U.S.C. § 7403(c), the district court "shall . . . finally determine the merits of all claims to and

liens upon the property, and . . . may decree a sale of such property, by the proper officer of the

court, . . .."

Here, based on the stipulations, the undisputed facts, and the July 25, 2002 judgment

against the Estate, the facts are simple and the case for foreclosure straightforward. In essence,

the July 25, 2002 judgment established the Estate's liability for unpaid taxes and determined the

amounts owed by the Estate to the United States and the State of Texas. The undisputed

summary judgment evidence proves that the Estate has not paid its federal estate tax, the Estate

owns the Properties at issue here, and the IRS has valid liens against all property owned by the

Estate including the Properties. Under these facts, the IRS is legally entitled to foreclose the

federal tax liens, as well as the Deed of Trust, against the Estate's Properties. There are no

genuine issues of material fact involved. Consequently, the United States is entitled to summary

---

[12]    26 U.S.C. § 7403 addresses actions to enforce liens or to subject property to the payment of taxes and provides in relevant part:

> The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

judgment authorizing it to foreclose its federal tax liens and Deed of Trust against the Properties.

*Foreclosure Under 28 U.S.C. § 2001 Warranted*

With a judgment authorizing foreclosure of its liens, the United States moves the Court to enter an order of sale authorizing the United States' Marshals Service to sell the Properties by public auction under 28 U.S.C. § 2001(a).[13]  An auction under 28 U.S.C. § 2001(a) provides the certainty of a sale, controls the open and fair manner of the auction and sale, provides for a clear and valid title to the buyer, and guarantees the prompt payment of the sale proceeds to the deserving creditors.

In that regard, the IRS has waited over 16 years for payment from the Estate, longer than any private creditor would have waited.  The public has an interest in the prompt collection of tax revenues. See Franchise Tax Board of California v. United States Postal Service, 467 U.S. 512, 523 (1984) ("taxes are the life-blood of government, and their prompt and certain availability an imperious need," *quoting* Bull v. United States, 295 U.S. 247, 259-60 (1935)).  Public policy supports the notion that the United States deserves to be paid now.

The Estate's tax debt originated in 1985.  That debt increases daily.  Prompt payment of a portion of the debt via foreclosure sale proceeds would reduce the balance owed to the IRS and slow the amount of interest incurred by the Estate.  As the Properties are foreclosed and proceeds are paid to the IRS, the amount due the IRS from the South Padre property sale is decreased, so the State of Texas has a greater opportunity for recovery of its taxes.

---

[13]    Section 2001 provides as follows: (a) Any realty or interest therein sold under any order or decree of any court of the United States shall be sold as a whole or in separate parcels at public sale at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs. Such sale shall be upon such terms and conditions as the court directs.

9

Any argument that the Estate should be given more time to find a private buyer or to sell the Properties is without merit. The Estate has had 16+ years to sell these Properties and it cannot demonstrate a sustained, intense effort to sell these Properties.

There are several undisputable facts which distinguish this case from the first case. Unlike the two tracts of land on South Padre Island, where the Court was concerned with the potential undue harm to the third party buyer when it decided to exercise its limited equitable discretion under Rodgers and delay foreclosure of the South Padre Island tracts, there are no intervening third parties or buyers for the Properties in this case. Additionally, unlike the tracts on South Padre Island, the Properties in this case are not so valuable that few could afford to purchase them. Unlike the South Padre Island tracts, there are no permitting concerns that limit the marketability of these Properties. As the Estate has described them, these Properties are largely agricultural tracts. The best indicator that a market exists for these Properties is to subject them to a public auction under 28 U.S.C. § 2001(a). That conclusion embodies the federal policy behind 26 U.S.C. § 7403, which as stated by the Supreme Court, is to provide the federal government with the "opportunity to seek the highest return possible **on the forced sale** of property interests liable for the payment of federal taxes."[14]

Likewise, any argument that an auction may bring less than a private sale is equally without merit.[15] Congress did not impose "market value" thresholds or conditions upon judicial foreclosure sales other than the plain language of 28 U.S.C. § 2001(a). Indeed, the United States,

---

[14]    United States v. Rodgers, 461 U.S. 677, 699 (1983)(emphasis added).

[15]    Even nonliable third parties are not guaranteed "market value" as a condition precedent prior to a judicial foreclosure sale to enforce an IRS federal tax lien. United States v. Rodgers, 461 U.S. 677 (1983).

not the court, has the discretion to determine whether it would be more advantageous for it to enforce its rights to have property sold rather than to delay for some prospective financial benefit.[16]

Moreover, any argument that the court should direct the particular order of sale of the Properties is without merit, and would be an exercise in futility. The combined value of these Properties is less than the amounts owed by the Estate to the United States. Except to extent real property taxes are owed on the individual Properties, the United States is entitled to all of the proceeds after costs. Therefore, the United States should be allowed to determine the order in which the Properties will be sold or to sell them all at the same time.

Finally, any argument that the foreclosure of the Properties at issue in this case should wait until after the pending contract for the sale of the South Padre Island tracts to Legendary closes, is also without merit. Such a delay would be prejudicial to the United States and even more prejudicial to the State of Texas. As demonstrated at the first trial, the IRS and the State of Texas are prejudiced through the mere passage of time. Legendary's first lien on the South Padre tracts earns additional interest every day until the still uncertain sale of that property closes. Moreover, new ad valorem taxes accrue on the South Padre tracts and on the Properties at issue in this case. Thus, the eventual collection of these higher priority debts from assets of the Estate diminishes the overall amount of amount of assets which will be available to satisfy the liens held by the United States and the State of Texas.

At trial, neither the Estate nor Legendary would guarantee that the South Padre sale would close as scheduled. As such it is entirely inappropriate to require the United States and the

---

[16]     United States v. Sawyer, 243 F.Supp. 462 (D. Mass. 1965).

State of Texas to assume all of the risks associated with the possibility that Legendary will not

close on the South Padre Island property.  In its questioning of the Estate during closing

arguments, the Court indicated that Estate would have to choose between protecting its interest in

the South Padre Island properties and continuing to hold onto the Properties at issue in this case.

The Court gave the Estate what it wanted with respect to the South Padre properties.  As a

consequence, the Estate is not entitled to further the delay enforcement of the United States' tax

liens against its other Properties.

## CONCLUSION

There are no issues of liability.  The July 25, 2002 judgment, the current stipulations

among the parties, and the undisputed facts resolve any issue about the amount or validity of the

tax liens against the Estate.  As there are no genuine issues of material fact, the United States is

entitled to summary judgment as a matter of law authorizing it to foreclose its federal tax liens

and Deed of Trust against the Properties.

In addition, the priority of parties' claims against the Properties is not disputed, and as

such, the priority for distribution of the sales proceeds is clear.[17]  For each property sold, once

costs and the ad valorem taxes are paid, the remaining proceeds will be paid directly to the

United States in partial satisfaction of the Estate's IRS debt.

Finally, in light of the reasons discussed above, the United States is entitled to foreclose

---

[17]     Claims against the Properties rank in the following priority:

A.     First, for ad valorem taxes, including any liens of the Ad Valorem Taxing Authorities arising out
       of 2002 should the Property be sold after they come due and their payment not be made as part of
       the sale;

B.     Second, the United States' federal tax lien and deeds of trust in the amount of the stipulated
       liability;

C.     Third, the liens of the State of Texas in the amount described in its stipulation with the Estate, &

D.     Fourth, to the Estate and the Heirs.

on the Properties via an order of sale authorizing the United States' Marshals Service to sell the

Properties by public auction under 28 U.S.C. § 2001(a).

Manuel P. Lena Jr.
Texas Bar No. 12201255/Southern ID 28780
**Andrew L. Sobotka**
Texas Bar No. 18819900/Southern ID 32631
Attorneys, Tax Division
U. S. Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
214/880-9750 or 9721[9741fax]
Attorneys for United States (IRS)

13

92

IN THE UNITED STATES DISTRICT COURT FOR THE

United States District Court
Southern District of Texas
ENTERED

SOUTHERN DISTRICT OF TEXAS

**JUL 2 5 2002**

BROWNSVILLE DIVISION

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff | § | |
| v. | § | CIVIL NO. B-01-053 |
| GRADY F. HEROLD, SR., et al., | § | |
|     Defendants | § | |

### FINAL JUDGMENT

On June 24, 2002, this action came on for trial before the Court, Honorable Hilda G. Tagle, U.S. District Judge presiding, and the issues were having been duly tried and a decision was having been duly rendered,

It is ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

    1.    That the United States recover from the Estate the stipulated amount of federal estate tax, penalty and interest in the sum of $2,763,920, plus the amount of accrued statutory interest after December 31, 2001, as reduced by a 26 U.S.C. §2053 deduction for 50% of all federal interest accruing on the stipulated liability after December 31, 2001, until such sum is finally paid by the Estate.

    2.    That the State of Texas recover from the Estate the stipulated amount of state inheritance tax, penalty and interest in the sum of $771,504.72, as of June 24, 2002, together with interest at the rate of ten percent per annum until paid, as reduced by a deduction pursuant to 26 U.S.C. §§2011 and 2053 for 50% of all federal interest accruing on the stipulated liability after December 31, 2001, until such sum is finally paid by the Estate.

    3.    That the estate tax lien and deed of trust asserted by the United States of America

Page 1 of 3



and the inheritance tax lien asserted by the State of Texas upon the two tracts of property owned by the Estate of Lillian A. Schwarz (Estate) that are described in the attached Government Exhibit 1 (the Property) are hereby foreclosed, subject to paragraph 4 hereinafter.

4.    That the appointment of a receiver pursuant to 26 U.S.C. §7403 or a sale under 28 U.S.C. 2001 shall not take place until the occurrence of the earlier of the following (the occurrence of which shall constitute a "Trigger Event") (a) June 25, 2003, or (b) upon notice or application to the Court that the November 16, 2001, contract between the Estate and Legendary SPI, Inc. has been terminated.  Legendary and the Estate shall promptly notify the Court in writing with copies sent to the other parties of any termination of the November 16, 2001, agreement.

5.    That a receiver shall be appointed after the Trigger Event and that the Property be sold pursuant to 26 U.S.C. §7403 on or after the Trigger Event.

6.    That the sale proceeds shall be distributed in the following priority:

    (a)    to payment of the expenses of sale;

    (b)    pro rata, to

        (i)    Legendary SPI, Ltd. in the amount of $629,823.51, together with interest at the rate of 8% per annum from April 17, 2002,  and

        (ii)    Cameron County, Texas, Laguna Madre Water District, Cameron County Emergency Services, Southmost Union Jr. College District, Point Isabel Independent School District, the Town of South Padre Island, South Texas Independent School District and the Cameron County Appraisal District ("the property taxing jurisdictions") in

Page 2 of 3

the amount of any unpaid and past due ad valorem property taxes assessed on the Property for calendar year 2002 and subsequent years or to the holder of said Ad Valorem Tax liens for such taxes if the liens are not held by the property taxing jurisdictions;

(c)    to the United States of America up to the amount stated in paragraph 1;

(d)    to the State of Texas up to the amount stated in paragraph 2; and

(e)    any funds remaining to the Estate.

7.    All other relief not expressly granted herein is DENIED.

Done at Brownsville, Texas on July 24, 2002.

The Hon. Hilda G. Tagle
U.S. DISTRICT JUDGE

Page 3 of 3

Tract I:

Approximately 14.5 acres out of a 21.83 acre tract, said 21.83 acre tract being out of the Mrs. A. D. Dickinson, Jr. Tract on Padre Island, Cameron County, Texas, being a part of that certain land described in an instrument recorded in Volume 196, Page 24, Deed Records, Cameron County, Texas, said 21.83 acres being more particularly described as follows: BEGINNING AT A POINT on the North line of the Mrs. A. D. Dickinson, Jr. Tract, said point being the point of intersection of said North line with the East right-of-way line of Padre Boulevard; THENCE with the North line of said Mrs. A. D. Dickinson, Jr. Tract, North 83 degrees 45 minutes East a distance of 1175.0 feet to a point on the ordinary high tide line of the Gulf of Mexico for the Northeast corner of this tract; THENCE with the meanders of the ordinary high tide line of the Gulf of Mexico, South 11 degrees 43 minutes 30 seconds East, 306.1 feet and South 7 degrees 26 minutes East a distance of 193.9 feet to a point for the Southeast corner of this tract, it being the intent of this call to describe 500 feet of frontage on the Gulf of Mexico in accordance with the directions of the meanders as here stated; THENCE South 83 degrees 45 minutes West parallel to and at a perpendicular distance of 498.56 feet from the North line of this tract, a distance of 1893.58 feet to the line as surveyed by J. S. Boyles for the State of Texas, for the Southwest corner of this tract; THENCE with the Boyles' Survey along the Laguna Madre as above cited, North 12 degrees 07 minutes West a distance of 501.18 feet to its point of intersection with the North line of the Mrs. A. D. Dickinson, Jr., Tract for the Northwest corner of this tract; THENCE with the North line of the Mrs. A. D. Dickinson, Jr. Tract, North 83 degrees 45 minutes East a distance of 736.6 feet to the PLACE OF BEGINNING, containing 21.83 acres, more or less, said 21.83 acre tract being more specifically described as Tract I in Deed from Jettie View Development Company, Inc., a Texas Corporation, to D. J. Schwarz dated March 31, 1975, said approximately 14.5 acres being the 21.83 acres less the acreage conveyed previously by D. J. Schwarz to the State of Texas for roadway purposes.

SAVE AND EXCEPT 32,591.2 square feet; being 32,591.2 square feet out of a 21.83 acre tract (said 21.83 acres being described as Tract I in Deed from Jettie View Development Company, Inc. to D. J. Schwarz dated March 31, 1965 and recorded in Cameron County Deed Records, Volume 780, Page 507) out of the Mrs. A. D. Dickinson, Jr. Tract in South Padre Island, Cameron County, Texas, and said 32,591.2 square foot tract being more particularly located and described as follows: COMMENCING at a concrete monument at the intersection of the East right-of-way line of Padre Boulevard and the North line of said Dickinson's 133-1/3 acre tract, for the Northwest corner and PLACE OF BEGINNING of this tract; THENCE along the North line of said 21.83 acre tract and Mrs. Dickinson's 133-1/3 acre tract, North 83 degrees 45 minutes, East 175.0 feet to a ½ inch iron pin inside of a ¾ inch steel pipe, for the Northeast corner of this tract; THENCE South 06 degrees, 15 minutes East 175.0 feet to a ½ inch iron pin inside of a ¾ inch steel pipe for the Southeast corner of this tract; THENCE parallel to the North line of said 21.83 acre tract, South 83 degrees 45 minutes West, 201.0 feet to a ½ inch iron pin inside a ¾ inch steel pipe on the East right-of-way line of said Padre Boulevard, for the Southwest corner of this tract; THENCE along the East right-of-way line of said Padre Boulevard along a curve to the left having a radius of 1482.4 feet, a partial arc distance of 177.04 feet to the PLACE OF BEGINNING containing 32,591.2 square feet, more or less, not inclusive of any road right-of-way.

EXHIBIT A



Tract II:

Approximately 9.95 acres out of a 11.87 acre tract, said 11.87 acres out of the Mrs. A. D. Dickinson, Jr. Tract on Padre Island, Cameron County, Texas, being a part of that land described as follows: BEGINNING at the intersection of the North line of the Mrs. A. D. Dickinson, Jr. Tract and the line as surveyed by J. S. Boyles for the State of Texas, for the Northeast corner of this tract; THENCE, with the Boyles' line as above cited, South 12 degrees 07 minutes East a distance of 501.18 feet to a point for the Southeast corner of this tract; THENCE, South 83 degrees 45 minutes West parallel to and at a perpendicular distance of 498.56 feet from the North line of this tract, a distance of 1016.18 feet to a point on the West line of the Mrs. A. D. Dickinson, Jr. Tract for the Southwest corner of this tract; THENCE, with the West line of said tract, North 16 degrees 44 minutes West a distance of 507.02 feet to the Northwest corner of the Mrs. A. D. Dickinson, Jr. Tract for the Northwest corner of this tract; THENCE, with the North line of the Mrs. A. D. Dickinson, Jr. Tract North 83 degrees 45 minutes East a distance of 1057.2 feet to the PLACE OF BEGINNING, containing 11.87 acres, more or less, said approximately 9.95 acres being the 11.87 acres less the acreage conveyed previously by D. J. Schwarz to the State of Texas for roadway purposes.

AS TO ALL TRACTS, SAVE AND EXCEPT all prior reservations of oil, gas, and other minerals, and SAVE AND EXCEPT all oil, gas or other minerals owned by Seller, if any.

AS TO ALL TRACTS SUBJECT TO: Easements of record and visible easements; restrictions and limitations of record; any changes caused by erosion, accretion or reliction; zoning ordinances and restrictive laws applicable to the property, if any; oil and gas leases of record.

EXHIBIT B

## Certificate of Service

IT IS HEREBY CERTIFIED that service of the foregoing document has been

made on December 17, 2002, by mailing a copy thereof to:

Larry Sherlock
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002-4401

Kent M. Rider
Linebarger Heard
P.O. Box 17428
Austin, Texas 78760

David Randell
Asst. Attorney General
Bankruptcy & Collections Div.
P.O. Box 12548
Austin, Texas 78711-2548

Yolanda Humphrey
Perdue, Brandon, Fielder, Collins & Mort
1235 North Loop West, Suite 600
Houston, Texas 77008

Manuel P. Lena Jr.

14